Leah C. Lively, OSB No. 962414
leah.lively@ogletreedeakins.com
Amanda A. Bolliger, OSB No. 103452
amanda.bolliger@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:    503.552.2140
Fax:          503.224.4518

Attorneys for Defendant JPMORGAN CHASE BANK, N.A.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| GEETEE ARJANGRAD,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A. a wholly-owned subsidiary of JPMorgan Chase & Co., a Delaware corporation,<br><br>Defendant. | Case No.: CV-10-1157-PK<br><br>Defendant JPMorgan Chase Bank, N.A.'s MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF PLAINTIFF'S FEE AGREEMENT AND NON-PRIVILEGED INFORMATION<br><br>ORAL ARGUMENT REQUESTED |

In her responses served on July 27, 2011, plaintiff invoked the attorney-client privilege and refused to respond to ***eleven*** discovery requests propounded by defendant.[1] Significantly, none of defendant's requests inquire as to the substance of any confidential communications.

---

[1] The disputed requests and plaintiff's objections and responses thereto are attached as Exhibits 1 (Requests for Production), 2 (Interrogatories) and 3 (Requests for Admission) to the Declaration of Amanda A. Bolliger in Support of Defendant's Motion to Compel Production of Plaintiff's

1 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone: 503.552.2140

Instead, the requests include plaintiff's fee agreement with counsel, dates of her meetings with counsel, and foundational information to determine whether a particular meeting was a "customer call," as plaintiff represented to her supervisors just before her termination, or was instead a personal meeting aimed at obtaining legal advice. Such information is clearly discoverable; plaintiff's boilerplate objections to the contrary should be overruled.

Plaintiff's assertion of the attorney-client privilege and attorney work product doctrines find no support in the law. As an initial matter, plaintiff failed to comply with Rule 26(b)(5)(A) by "describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed." To date, plaintiff has not served any privilege log or similar document to support her assertion of privilege. Particularly given that the disputed requests do not, on their face, seek disclosure of the substance of any communications between plaintiff and her counsel related to legal advice, plaintiff's conclusory assertion of privilege falls well short of her burden to deny defendant its requested discovery. As such, defendant respectfully requests that the Court grant its motion to compel.

## I.     STANDARDS

The Federal Rules of Civil Procedure permit broad discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). A party who "withholds information otherwise discoverable by claiming that the information is privileged . . ., the party must . . . describe the nature of the documents, communications, or tangible things not produced or

---

Fee Agreement and Non-Privileged Information ("Bolliger Decl.").

2 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Rule 26(b)(5)(A).

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) (district court erred by applying California law to decide boundaries of attorney client privilege). Under federal law, "[a] party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication." *Id*. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (emphasis omitted). "The fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (citing *Chen*, 99 F.3d at 1501). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Ruehle*, 583 F.3d at 608, quoting *Weil v. Inv. Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). "[T]he privilege stands in derogation of the public's 'right to every man's evidence' and as 'an obstacle to the investigation of the truth,' [and] thus, ... '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Ruehle*, 583 F.3d at 608, quoting *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) (citations omitted).

Typically, an eight-part test determines whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ruehle*, 583 F.3d at 608, citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071, n.2 (9th Cir. 1992). The party asserting the privilege bears the burden of proving each essential element.

3 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone: 503.552.2140

*United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000). Here, plaintiff cannot establish that the information and documents at issue are privileged.

## II.     ANALYSIS

### A.     Plaintiff's Fee Agreement Is Not Privileged As a Matter of Law.

Plaintiff refuses to produce plaintiff's fee agreement on the basis of attorney client privilege. (Request No. 76, Bolliger Decl., Exhibit 1). Plaintiff's refusal to produce her fee agreement violates established precedent in this Circuit. As noted, the attorney-client privilege only protects confidential communications between client and counsel that are made for the purpose of obtaining or providing legal advice. *Fisher v. United States*, 425 U.S. 391, 403 (1976). "Information regarding the fee arrangement is ordinarily not part of the subject matter of the professional consulting and therefore is not privileged communication even though it may evidence wrongdoing by the client." *In re Grand Jury Proceedings (Goodman)*, 33 F.3d 1060 (9th Cir. 1994) (ordering disclosure of "amount of money [attorney] received, the dates he received payment, from whom the money was received" and rejecting assertion of attorney-client privilege; the fact that the client retained attorney to represent him in the proceeding "does not in and of itself reveal any confidential communication"). As such, "client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege." *Ralls v. United States*, 52 F. 3d 223, 225 (9th Cir. 1995); *United States v. Blackman*, 72 F.3d 1418 (9th Cir. 1995) (ordering law firm to produce fee agreements to IRS finding that attorney client privilege did not apply). Plaintiff's assertion of privilege as to her fee agreement fails.

4 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

Plaintiff's objection that producing the fee agreement – likely a single document saved and readily available in her attorney's files – would somehow be "oppressive," should likewise be overruled. Plaintiff's remaining boilerplate objection that the fee agreement is not reasonably calculated to lead to admissible evidence, given the request for attorneys' fees in this case, is also meritless.

**B.     The Fee Agreement Is Reasonably Calculated to Lead to Discovery of Admissible Information.**

   **1.     Plaintiff's Fee Agreement Is a Factor to Determine the Reasonableness of Any Fee Request.**

Plaintiff currently demands attorneys' fees in connection with each and every one of her seven claims. First Am. Compl. (Dkt. No. 14) at 16-19. Plaintiff's fee agreement is a factor in determining the reasonableness of any requested fee. *See Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness. 'The fee quote to the client or the percentage of the recovery agreed to is helpful in demonstrating attorney's fee expectations when he accepted the case.'"). Defendant is entitled to discover plaintiff's agreed upon fees – particularly any hourly rate – for her counsel.

   **2.     The Date Plaintiff Retained (and Met With) Counsel May Undermine Plaintiff's Claim of Discriminatory and/or Retaliatory Termination.**

The fee agreement may reveal when plaintiff retained counsel. To the extent she retained counsel prior to her termination and/or related corrective action, such information may support an argument that plaintiff was laying a foundation for her lawsuit prior to the adverse actions she now alleges are discriminatory or retaliatory. Another federal court ordered production of an employment discrimination plaintiff's fee agreement for precisely this reason. *See Tingey v. City of Sugar Land*, Civil No. H-07-2391 (S.D. Tex. Dec. 14, 2007), attached to the Bolliger Decl. as

5 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

Exhibit 4 (ordering production of employee's fee agreement in disability discrimination suit on grounds that "the agreement may lead to admissible evidence regarding the timing of [employee's] initial consultation with lawyers," thereby "possibly showing that [employee] was laying a foundation for a lawsuit while still employed by [employer], prior to any adverse employment action being taken against him").

The date plaintiff retained her attorney also may shed light on performance issues that plaintiff's managers noted when they decided to terminate her, including plaintiff's possible falsification of "customer call" activities that she was required to perform as part of her job. Specifically, less than two weeks before her termination, on February 22, 2010, plaintiff represented that she conducted a "customer call" with Spaulding Cox LLP (the predecessor firm to her current counsel, Spaulding & Potter LLP). *See* Bolliger Decl., Exhibit 5 at 2. To the extent plaintiff retained counsel prior to that call, it may support an argument that plaintiff misrepresented other customer call activities. If, on the other hand, plaintiff retained counsel *after* the February 22 call, such information may assist in identifying potential witnesses for trial. To the extent Spaulding Cox LLP was actually a customer or prospect of plaintiff's prior to her termination, those representatives from Spaulding Cox who met with plaintiff on February 22, may have percipient knowledge regarding plaintiff's performance as a Relationship Manager, among other information.

### 3. The Date Plaintiff Retained Counsel May Support an Affirmative Defense of After-Acquired Evidence.

The date plaintiff retained counsel – and, specifically, any information that plaintiff retained Spaulding Cox LLP to represent her in this case *before* her purported "customer call"

6 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT
AND NON-PRIVILEGED INFORMATION

with that firm on February 22, 2010 – may support an affirmative defense of after-acquired evidence, in that misrepresenting customer call activities could constitute a dishonest act for which plaintiff would be terminated (and perhaps rendered unemployable under defendant's Fidelity bond). Defendant is entitled to take discovery of facts that may properly support an affirmative defense in this case.

C.  **Dates and Other Incidental Information Regarding Plaintiff's Meetings With Counsel Are Not Privileged.**

Relying on the attorney-client privilege and improper boilerplate objections,[2] plaintiff refuses to disclose: (1) the dates that plaintiff (a) first met her current counsel (Interrogatory No. 18), and (b) retained her current counsel (Interrogatory No. 20); as well as (2) incidental information regarding her communications with Spaulding Cox (now Spaulding & Potter) (a) prior to retaining that Firm as counsel, including the dates and means of such communications (Interrogatory No. 21), and (b) during the "customer call" plaintiff recorded on February 22, 2010, including whether it was in fact a "customer call" (Request For Admission No. 98) whether she met with her current attorney, Tom Spaulding, during said call (Request For Admission No. 99), and the foundational element to any assertion of privilege – i.e., whether the purpose of the call was to seek legal advice (Request For Admission No. 100) and/or to discuss Spaulding Cox LLP's potential or existing customer account(s) with Chase (Request For Admission No. 101).

---

[2] Plaintiff's objections that the requested information is "not reasonably calculated to lead to discovery of admissible evidence" also should be overruled for the reasons stated in Sections II.B.2 and II.B.3. Further, plaintiff has not provided any valid explanation as to how producing the dates she met with and retained counsel would be "oppressive." Likely the requested information could be gleaned simply by referencing plaintiff's (or her attorney's) calendar.

7 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

Plaintiff's reliance on the attorney-client privilege with respect to this information finds no support in federal law.  As noted above, the attorney-client privilege only protects certain types of "***communications***."  *Ruehle*, 583 F.3d at 608 (emphasis added).  Dates, means, and the identity of parties to a communication are not themselves communications; they are incidental information concerning *events*.  Federal courts across the country have recognized this principle, holding that the dates of a client's meetings with counsel are not privileged because "the fact of the meeting itself . . . does not reveal any confidential communications."  *See, e.g.*, *In re Application For Subpoena To Kroll*, 224 F.R.D. 326, 329 (E.D.N.Y. 2004) (ordering production of privilege log stating dates of meetings despite claim that "Defendant may obtain information about the date Kroll's client conceived the invention – a fact that may be privileged – by discovering the date Kroll first met with his clients;" "the identification of clients or meetings therewith, does not disclose nor imply a confidential communication").  Plaintiff should be compelled to provide the requested information.

Further, plaintiff should be compelled to take a position one way or the other, as to whether the February 22, 2010, "customer call" she reported to her managers was in fact a "customer call," or was made for the purpose of obtaining legal advice.  If it was the former, then plaintiff must admit that it was a "customer call," and must disclose all requested information, including describing the complete substance of the call and producing all documents exchanged, regarding the February 22 meeting.  *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) ("The fact that a person is a lawyer does not make all communications with that person privileged.").  If it was the latter, then plaintiff should be required to admit that foundational element – i.e., that the purpose of the meeting was to obtain legal advice, not to conduct a

8 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

"customer call" as plaintiff represented to her supervisors.

Finally, even if the February 22 meeting was for the purpose of obtaining legal advice, any documents that plaintiff produced at that meeting are *not* themselves privileged. It is well settled that documents do not become cloaked with the attorney-client privilege merely because they are passed from client to lawyer. *Fisher v. United States*, 425 U.S. 391, 403-04 (1976).

### III.  CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant its motion and order plaintiff to provide complete responses to Requests for Production Nos. 76, 77 and 78, Interrogatory Nos. 18, 19, 20 and 21, and Requests for Admissions Nos. 97, 98, 99, 100 and 101.

Dated this 8th day of August, 2011.

          **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

          By:  /s/ Amanda A. Bolliger
               Leah C. Lively, OSB No. 962414
               leah.lively@ogletreedeakins.com
               Amanda A. Bolliger
               amanda.bolliger@ogletreedeakins.com
               Telephone:   503.552.2140

               Attorneys for Defendant JPMORGAN CHASE BANK, N.A.

10741836.1 (OGLETREE)

9 – MEMO. ISO DEFT'S MOTION TO COMPEL PRODUCTION OF FEE AGREEMENT AND NON-PRIVILEGED INFORMATION

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone: 503.552.2140