Leah C. Lively, OSB No. 962414
leah.lively@ogletreedeakins.com
Amanda A. Bolliger, OSB No. 103452
amanda.bolliger@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:     503.552.2140
Fax:                503.224.4518

Attorneys for Defendant JPMORGAN CHASE BANK, N.A.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GEETEE ARJANGRAD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JPMORGAN CHASE BANK, N.A. a wholly-owned subsidiary of JPMorgan Chase & Co., a Delaware corporation,<br><br>　　　　Defendant. | Case No.: CV-10-1157-PK<br><br>Defendant JPMorgan Chase Bank, N.A.'s MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE OF ANY EMOTIONAL DISTRESS RELATED INJURY (INCLUDING MITIGATION) |

   Plaintiff wants to have her cake and eat it too with regard to emotional distress. On the one hand, plaintiff seeks **$300,000** for emotional distress damages and testified that she suffers ***ongoing*** anxiety, upset, and ***agoraphobia-like symptoms*** related to her treatment by and termination from employment with defendant – symptoms that she claims ***impair her ability to get another job***.  (Sixteen months later, plaintiff remains

1 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S
MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

unemployed, having applied for only six jobs.)  On the other hand, plaintiff refuses to produce *any* information in response to both deposition questions and written discovery regarding (1) whether she treated for anxiety or other mental health issues; (2) what the nature and scope of the treatment was; (3) with whom she has treated—a psychotherapist or medical doctor; and (4) whether she suffered from any mental health problems prior to the allegedly unlawful conduct in her Complaint.  More troubling, plaintiff refuses to admit that she does not suffer from a diagnosis of depression, anxiety, post traumatic stress disorder or severe emotional distress related to her employment at Chase.

Plaintiff's cloaking her emotional distress as "garden variety" does not change her testimony, the exorbitant sum prayed for, or the analysis.  Numerous courts have found that allegations of ongoing emotional distress or unusual symptoms (like agoraphobia) take plaintiff out of the realm of "garden variety" emotional distress, waive the federal psychotherapist-patient privilege, and allow for discovery.  Moreover, the psychotherapist privilege, on which plaintiff relies for her refusal to produce discovery, patently *does not* protect against discovery of whether plaintiff has, in fact, treated for mental health issues, or non-psychotherapist medical records (such as treatment by a family practice practitioner).

Plaintiff cannot have it both ways.  She needs to either produce documents and respond to questions about her alleged emotional distress, its limits and potential causes, or be precluded from introducing evidence related to any emotional distress symptoms at trial—including any claim that such distress impeded her ability to mitigate her damages and find another job.  Anything less would put defendant on unequal footing in its ability to dispute plaintiff's claims and prove its affirmative defenses.

2 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S
MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

## I.     RELEVANT FACTS

At her deposition,[1] plaintiff testified to ongoing anxiety and fear of going out in public, resulting in difficulty finding a job, since her termination:

> Q. Going back to my question earlier about what you do during the day, I'm just trying to get, do you stay in your house all day? Do you do things for fun? What do you do? It's been a year.
>
> A. *Like I said, I do try to keep a very low profile. . . . I've lost quite a bit of my confidence since what happened at Chase. So no, I don't go out very much.*

Ex. 1 at 168:14-20.

> Q. What is it that makes you think you need to keep a low profile?
>
> A. *For one, I don't want to discuss the lawsuit. But secondly, I really don't want to be -- run into any clients. I knew a lot of people in the community prior to this. And I feel that . . . I just don't want to run into anybody.*

*Id.* at 169:7-13.

> Q. Other than sometimes occasional difficulty sleeping, have you had any other physical symptoms related to emotional distress? What I mean by that is upset stomach, vomiting, crying spells, something physical as opposed to how you felt internally.
>
> A. *I do feel anxiety as a result of-- especially when I'm trying to apply for a job, I feel a lot of anxiety. . . .*

*Id.* at 171:3-9.

> Q. So why, then, don't you have . . . [m]ore confidence that a new job would be a positive experience?

---

[1] Relevant portions of plaintiff's deposition testimony are attached to the Declaration of Amanda Bolliger ("Bolliger Decl."), as Exhibit 1.

3 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

> A.    . . . I get this fear that this is -- the experience was so overwhelming, it was so bad, that somehow I'm worried that, oh, my goodness, what if this occurs again. . . .

*Id.* at 171:21-172:3.

> Q.    And what have you done during the time that you've not been working? . . .
>
> A.    . . . *[I]t has been very, very difficult in that, you know, I try to keep a low profile*. *I'm afraid -- like sometimes when I do go out, if I'm going to the grocery store, I'm going to run into a client. So for the most part I'm keeping a low profile and keeping -- I don't meet with too many people.  I don't go out that much*.

*Id.* at 166:17-167:2.  Nevertheless, plaintiff refused to (1) answer *any* deposition questions about whether she sought treatment for the alleged symptoms (Ex. 1 at 30:5-14); or (2) respond to related written discovery requests, including admissions about treatment and diagnosis for said symptoms.[2]

## II.    ARGUMENT

**A.    Information Unrelated To Any Psychotherapist-Patient Communications Are Not Protected And Should Be Compelled.**

### 1.    Plaintiff Improperly Invokes a "Physician-Patient Privilege," Which Federal Law Does Not Recognize.

Plaintiff's refusal to provide discovery on the basis of the "**physician**-patient privilege" is meritless.  *See* Ex. 1 at 30:5-14; RFPs 9, 10, 59-66; Interrogatory 9; RFAs 81-95.  The psychotherapist-privilege only protects confidential communications between a ***psychotherapist*** and patient in the course of diagnosis or treatment.  *Jaffee v. Redmond*,

---

[2] The relevant requests (and plaintiff's responses thereto), which are contained in Defendant's First and Second Sets of Production of Documents ("RFPs"), Defendant's First and Second Sets of Interrogatories ("Interrogatories"), and First Set of Requests For Admission ("RFAs") are attached to the Bolliger Decl. as Exhibits 2, 3 and 4, respectively.

4 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

518 U.S. 1, 11 (1996).  It does not protect plaintiff's communications to medical providers who are not psychotherapists.  *See EEOC v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 120 (W.D.N.Y. 2009) (refusing to extend privilege to include medical providers who are not psychotherapists, even if treatment sought was referral for depression); *Prue v. Univ. of Wash.*, 2008 WL 3891466, *1 (W.D. Wash. Aug. 19, 2008) (granting employer's motion to compel to identify medical providers, nature and dates of treatment, and release medical records and overruling objection based on state law physician-patient privilege; "[a]lthough the Supreme Court has recognized a federal psychotherapist-patient privilege, it has not approved of a broader federal privilege.").[3]

A court in this Circuit recently granted an employer's motion to compel a plaintiff, who claimed "garden variety" emotional distress from discrimination and retaliation, to identify her healthcare providers and release three years of healthcare records.  *Bennett v. Interfor Pac., Inc.*, No. C10-5277BHS (W.D. Wash. June 27, 2011), attached to the Bolliger Decl. as Exhibit 5 ("[T]he Court is unaware of any binding authority for the proposition that the standard of production of information is based on whether the alleged emotional distress is only 'garden variety;'" "the records may support or refute Bennett's alleged emotional distress and the extent of the same.").  At a minimum, plaintiff should be ordered to provide all requested medical information that does not implicate any psychotherapist.  Ex. 1 at 30:5-14; RFPs 9, 10, 59-66; Interrogatory 9; RFAs 81-95.

---

[3] Plaintiff may try to rely on *Fischer v. The City of Portland*, 2003 WL23537981 (E. Or. Aug. 22, 2003), to assert that Oregon's physician-patient privilege should apply.  Any such argument should be rejected.  First, the federal law of privilege governs here because plaintiff has asserted federal claims under Title VII and 42 U.S.C. § 1981. *Jaffee*, 518 U.S. at 8-10.  Second, *Fischer allowed* the employer to use medical and psychological records that were produced during discovery, and merely reserved the question whether and to what degree the employer could use the records at trial.

5 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S
MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

### 2. The Psychotherapist Privilege Does Not Protect Dates of Treatment and Other Information Regarding Non-Communicative Facts.

Plaintiff refused to answer deposition questions and written discovery regarding facts and events related to her healthcare, including whether, when and for what she has obtained treatment. Ex. 1 at 30:5-14; Interrogatory 9; RFAs 81-95. But the psychotherapist privilege only protects certain confidential **communications**. *Jaffee*, 518 U.S. at 12. Such facts and events are not *communications*, are not subject to any privilege, and should be compelled. Plaintiff must also produce documents referencing medical information not comprising a communication between herself and a psychotherapist. RFPs 9, 10, 59-66.

### B. Plaintiff Waived The Psychotherapist Privilege By Placing Her Emotional Distress At Issue For Emotional Distress Damages And Mitigation.

#### 1. No Binding Precedent Allows Plaintiff to Use Psychotherapist Privilege to Shield Discovery Regarding Emotional Distress Damages.

Federal courts recognize that a plaintiff who puts her mental condition in issue waives the psychotherapist privilege. *See, e.g.*, *In re Sims*, 534 F.3d 117, 134 (2d Cir. 2008). It remains unsettled in this Circuit "whether there has been a waiver of the psychotherapist-patient privilege simply because plaintiffs claimed emotional distress in their complaint and described what some courts have termed 'garden-variety emotional distress' . . ." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal. 2003) (adopting "narrow" approach to waiver). As set forth below, however, plaintiff's damages here are decidedly not "garden variety."

In *EEOC v. Cal. Psych. Transitions*, 258 F.R.D. 391, (E.D. Cal. 2009), the Eastern District of California declined to follow *Fitzgerald* and, instead, adopted the "broad" approach to waiver. *Id.* at 399-400. The court compelled a plaintiff claiming sexual harassment to produce her medical/psychological records, notwithstanding that

6 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

"no claim of intentional infliction of emotional distress was made," where plaintiffs "emotional distress damages is the crux of Plaintiff's claim:"

> Defendant should be able to determine whether Plaintiff's emotional state may have been [a]ffected by something other than Defendant's alleged actions. . . . [I]t is only fair to allow Defendant access to [that] information. To protect the records would allow Plaintiff to proceed with a claim on unequal terms. If the EEOC wants a jury to compensate Plaintiff for emotional distress, Defendant should be able to explore in discovery, other circumstances that may have caused the injury. The court can be the gatekeeper of the ultimate admissibility of the evidence through a Rule 403 balancing analysis at trial. A protective order, and a direction that any of the disclosed material filed with the court must be done under seal, will protect [the employee's] privacy rights.

*Id.* 400; *see also Doe v. City of Chula Vista*, 196 F.R.D. 562, 567 (S.D. Cal. 1999) (employment discrimination plaintiff seeking emotional distress damages relied on her emotional condition as an element of her claim, thereby waiving the privilege; "[i]t would not be fair or just to let the plaintiff hide behind a privilege when she had placed her emotional condition directly at issue . . . because it would allow the privilege holder to thwart the truth seeking process by using the privilege as both a shield and a sword").

This broader view of waiver should apply here, too. As with *Cal. Psych. Transitions*, plaintiff's emotional distress damages (**$300,000** for each of her seven claims) form a significant component of her claims. First Am. Compl., ¶ 33, 46, 55, 65, 76, 88, 100. If plaintiff "wants a jury to compensate" her for emotional distress, defendant "should be able to explore in discovery, other circumstances that may have caused the injury." *Cal. Psych. Transitions*, 258 F.R.D. at 400.

      **2.**      **Plaintiff's Claimed Agoraphobia-Like Symptoms and On-Going Anxiety—Which Allegedly Impacted Her Ability To Mitigate—Far Exceed "Garden Variety" Emotional Distress.**

Even under the "narrow" view of waiver followed by some courts, plaintiff has waived any right to invoke the psychotherapist privilege. She refused to admit that she has not "sought medical treatment for," "suffered," or "been diagnosed with" severe

7 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

psychological conditions (including anxiety, post traumatic stress disorder, and depression) "as a result of any act or omission by Chase." RFAs 81-95. Instead, she testified to symptoms of agoraphobia and anxiety. These claims go well beyond "garden variety" emotional distress, particularly when they purportedly prevented her from mitigating her damages.

*Flowers v. C.O. Owens*, 274 F.R.D. 218 (N.D. Ill. 2011), is directly on point. Flowers, an inmate who sued correctional officers for emotional distress resulting from being beaten while in custody, agreed not to introduce expert testimony and to limit his claim to "garden variety" emotional distress damages. *Id.* at 220. The Court still denied plaintiff's motion to preclude discovery into his mental health records and from deposing his psychological/social worker, because plaintiff's testimony exceeded "the kinds of simple, usual, or ordinary emotions that courts have permitted plaintiff's to testify about without a resulting waiver of the psychotherapist-patient privilege." *Id*. at 227. Specifically, Flowers (1) continued to get depressed about what happened with defendants; (2) had "anxieties" about leaving his house as a consequence of defendants' conduct due to his fear of retaliation by law enforcement officers; (3) was in constant fear of the people involved in the case and had anxiety attacks; and (4) stayed at home "now more often that [he] ever did because of" the alleged beating. *Id*. at 222.

Like *Flowers*, plaintiff's testimony amounts to a "subtle claim of agoraphobia"[4] that "transcends garden variety emotional harm." *Id.* at 221-22. *See* Ex. 1 at 168:14-20,

---

[4] "[T]he Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, 4th ed. 2000) ('DSM–IV') lists the 'Features' of agoraphobia as including anxiety about being in places or situations from which escape might be difficult or embarrassing. **The anxiety typically leads to a pervasive avoidance of a variety of situations that may include being alone outside the home or being home alone**. Often an individual is better able to confront a feared situation when accompanied by a companion. (DSM–IV at 432)." *Flowers*, 274 F.R.D. at 227 (emphasis added).

8 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S
MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone: 503.552.2140

169:7-13, 171:3-14, 171:21-172:7, 166, 17-167:6.  If anything, plaintiff has placed her emotional condition *even more* at issue than the plaintiff in *Flowers*.  She has relied on her symptoms ***to excuse her failure to mitigate*** – i.e., testifying that they intruded into her desire and ability to find another job.[5]  Defendant has been unable to locate a single federal case that has applied the psychotherapist privilege to block discovery under similar facts.[6]

### C. Alternatively, Plaintiff Should Be Precluded From Introducing Evidence Of Emotional Harm Or Distress Resulting From Defendant's Actions.

Defendant simply cannot obtain the evidence it needs to defend itself against plaintiff's allegations, and prove its affirmative defense of failure to mitigate, without the requested discovery:

> A defendant against whom a claim of emotional distress has been asserted is helpless in mounting an adequate defense without all the relevant evidentiary materials, . . . [of which] plaintiff's mental health records are certainly an integral and indispensable component. . . . [D]epriving a defendant of that crucial evidence, while allowing a plaintiff to seek damages for emotional distress and simultaneously seek cover under a claim of privilege would simply be contrary to the most basic sense of fairness and justice and would essentially amount to a windfall for the plaintiff.

---

[5] In the 16 months since plaintiff's termination on March 5, 2010, she has applied for ***only six*** jobs.  Ex. 1 at 164:22-165:9.

[6] Plaintiff's testimony that psychological symptoms impeded her ability to interview and search for jobs distinguishes her claims from the most extreme cases on this subject. Even *Fitzgerald*, which other courts in this Circuit have declined to follow due to the unfairness of allowing a plaintiff to claim significant emotional distress while shielding discovery into its alternate causes (*see* Section II.B.1 above), did not entail or address any claim that the plaintiff's emotional distress symptoms impacted his ability to mitigate his damages.  216 F.R.D. at 633.  Further, even *Fitzgerald* allowed discovery into "the occurrence and dates of any psychotherapy including that which occurred before the incident."  *Id.* at 638.  Plaintiff refused to provide even that information here.  For the Court's convenience, Chase has prepared an Appendix setting forth other distinguishing facts from *Fitzgerald* and other inapposite decisions on which plaintiff may attempt to rely.  *See* Appendix A, attached hereto.

9 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S
MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE

*Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 (D.N.J. 2000). Fundamental fairness demands that Chase have an opportunity to discover information needed to disprove plaintiff's anticipated claims that (1) defendant caused her agoraphobia-like symptoms and anxiety (to the tune of $300,000); and (2) the emotional harm allegedly caused by defendant should excuse her failure mitigate. Plaintiff's mental and other health records are an "integral and indispensable component" of that defense. If plaintiff intends to deprive Chase of any ability to refute her claims, then she should be precluded from introducing evidence (including through her own testimony) that she suffered any form of emotional distress or harm resulting from or following her employment at Chase.

### III.  CONCLUSION

For the foregoing reasons, plaintiff should be compelled to (1) respond to deposition questions regarding treatment she sought for any claimed emotional distress because of Chase; (2) produce or make available for inspection all documents responsive to Document Production Requests No. 9, 10, 59–66; and (3) provide complete responses to Interrogatory No. 12 and Requests for Admission No. 81–95.

Dated this 8th day of August, 2011.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

By:  /s/ Amanda A. Bolliger
Leah C. Lively, OSB No. 962414
leah.lively@ogletreedeakins.com
Amanda A. Bolliger, OSB No. 103452
amanda.bolliger@ogletreedeakins.com
Telephone:   503.552.2140

Attorneys for Defendant JPMORGAN CHASE BANK, N.A.

10695074.1 (OGLETREE)

10 – MEM. ISO DEFT.'S MOTION TO COMPEL DISCOVERY OF PLAINTIFF'S MEDICAL INFORMATION OR, ALTERNATIVELY, TO PRECLUDE EVIDENCE