IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GETTEE ARJANGRAD,

    Plaintiff,

                                                3:10-cv-01157-PK
                                                OPINION AND ORDER

JPMORGAN CHASE BANK, N.A., a
wholly-owned subsidiary of JPMorgan
Chase & Co., a Delaware corporation,

    Defendant.

PAPAK, Judge:

      Plaintiff Gettee Arjangrad brings this employment discrimination action arising from her termination as a banker for defendant JPMorgan Chase Bank, N.A. ("Chase"). Arjangrad alleges claims for national origin, race, and sex discrimination under Title VII, 42 U.S.C. § 2000e, and Or. Rev. Stat. § 659A.030(1), national origin and race discrimination under 42 U.S.C. § 1981, and retaliation under Title VII, 42 U.S.C. § 1981, and Or. Rev. Stat. § 659A.030(f). Now before the court is Chase's motion to strike the expert report of Paul Buchanan, Esq. (#125). While Chase originally filed the motion in the context of summary judgment, I construe it as a motion

Page 1- OPINION AND ORDER

to exclude Buchanan's testimony at trial. For the reasons discussed below, Chase's motion is granted and Buchanan's testimony is excluded.

## FACTUAL BACKGROUND

In September 2011, Arjangrad submitted an expert statement by Paul Buchanan, Esq. concerning "the adequacy of JPMorgan Chase's [ ] investigation/response to the complaints of discrimination" that Arjangrad made during her employment. (Lively Decl., #127, Ex. 2) (Buchanan Report). Buchanan is a Portland, Oregon attorney with 21 years of experience in employment law, primarily representing and advising large employers on employment law issues. *Id.* Buchanan has trained employers and human resources managers regarding investigation of discrimination complaints and other employment law issues, and written articles on employment law compliance in national and local publications. *Id.* However, he possesses no formal education, training, or work experience pertaining to human resources other than what he has gained as an employment lawyer. (Lively Decl., #127, Ex. 1) (Buchanan Dep., at 35-36.)

In providing an overview of his opinions about the adequacy of Chase's response to Arjangrad's discrimination complaints, Buchanan purports to analyze "the general standard of thoroughness, responsiveness, and independence that is generally expected and practiced at large employers" and "the efficacy of the investigation practices in arriving at credible conclusions and demonstrating the employer's good faith intention to comply with the anti-discrimination statutes." (Buchanan Report, at 3.) Buchanan also purports to "express no opinion . . . as to whether Ms. Arjangrad was in fact subjected to discrimination or retaliation . . . ."[1] *Id.*

---

[1] In his analysis, however, Buchanan commented that Weldon's "selection of his team of RMS suggested that there might be some discrimination issue, given the concerns expressed regarding Mr. Weldon's comments about Mr. Taylor . . . ." *Id.* at 13.

Page 2- OPINION AND ORDER

First, Buchanan describes several cases from the Ninth and Seventh circuits holding that an adequate investigation is a necessary response to "an employee complaint or concern of discriminatory *harassment.*" (Buchanan Report, at 8) (emphasis added). In the context of harassment complaints, Buchanan notes that courts assess adequacy of an investigation by considering the timeliness, thoroughness, and impartiality of the investigation process. *Id.* Buchanan opines that even when investigating potential violations of anti-discrimination laws other than harassment, "sound HR practice dictates that the same standards that require prompt, thorough, and impartial investigations of discriminatory harassment generally apply . . . ." *Id.* Additionally, Buchanan implies that employers are motivated to conduct investigations in response to discrimination and retaliation complaints, even though they are not required to by case law, because "most large employers seek to preserve their ability to argue, pursuant to the U.S. Supreme Court's decision in *Kolstad v. American Dental Association*, 527 U.S. 516, 119 S.Ct. 2118 (1999), that they make good-faith efforts to comply with anti-discrimination statutes," and because "courts generally reward employers for conducting prompt, thorough investigations...." *Id.* at 8-9. Buchanan also cites to EEOC guidance documents instructing employers to establish mechanisms for prompt, thorough, and impartial investigations regarding employee discrimination complaints. *Id.* at 9. Finally, Buchanan recognizes that Chase has an internal policy calling for a prompt investigation after an employee report of discrimination. *Id.*

Next, Buchanan concludes that Chase's response to Arjangrad's January 2010 complaints of discrimination was "inadequate" for several reasons. Buchanan opines that the investigator– Ms. Kane– was not "sufficiently impartial" because: (1) she was the HR "business partner" of Mr. Weldon, who Arjangrad accused of discrimination; (2) she was already working with

Page 3- OPINION AND ORDER

Weldon on Arjangrad's termination when she started her investigation; (3) her investigation was cursory; and (4) she emphasized the seriousness of Ajrangrad's complaint, which obviously would dissuade Arjangrad from advancing such allegations. *Id.* at 10. Buchanan also proposes that the investigation was cursory because Kane never spoke with Weldon's current and former supervisors, did not question Weldon in enough detail, did not review any documents, did not conduct interviews in-person, and did not conduct any follow-up investigation after Arjangrad reiterated her complaints.[2] *Id.* at 10,11. Buchanan also faults Chase for failing to create a dated, written report following the investigation, which "is inadequate for a large, sophisticated employer and does not meet the generally accepted standards of thorough HR practice." *Id.* at 12. Finally, Buchanan takes issue with the rationales Kane recorded for her finding that discrimination did not occur, opining that two of Kane's three justifications were "simply truisms that do not indicate one way or another whether discrimination occurred" and that the other was "not compelling evidence." *Id.* at 13.

Buchanan reached these conclusions based on a review of documents provided to him by Arjangrad's counsel and conversations with that counsel. *Id.* at 2. Buchanan, however, did not seek out documents other than those provided by Arjangrad's counsel or perform any other investigation or research. (Buchanan Dep., at 41, 47, 48.)

## DISCUSSION

Chase argues that Buchanan's report is inadmissible under Federal Rule of Evidence 702 and the standards established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

---

[2] Buchanan states that "Ms. Kane appears to have been more focused on advancing her 'client's' agenda in disciplining and terminating Ms. Arjangrad rather than seeking to probe earnestly the assertion that Mr. Weldon was engaging in discrimination." *Id.* at 12.

Page 4- OPINION AND ORDER

(1993). Rule 702 specifically provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Broadly speaking, *Daubert* and Rule 702 require that an expert be qualified and the expert's testimony be both reliable and relevant. *Daubert*, 509 U.S. at 589; *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir.1995) ("*Daubert II*") ("The question of admissibility only arises if it is first established that the individuals whose testimony is being proffered are experts in a particular scientific field"). The district court must act as a "'gatekeeper,' excluding 'junk science' that does not meet the standards of reliability required under Rule 702." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002). This Rule 702 inquiry is flexible, however, and depends on the facts of the particular case. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). Admissibility of expert testimony is a matter for preliminary determination by the court under Fed. R. Evid. 104(a), and the party offering the evidence bears the burden of proving admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592-593.

Although I find that Buchanan is qualified to offer opinions about standard practices for employment discrimination investigations, I conclude that the opinions he offers on that subject

Page 5- OPINION AND ORDER

are unreliable. For some of the same reasons, these conclusions are also irrelevant because they are unhelpful to a jury.

## I.   Qualification

Chase contends that Buchanan is not qualified to opine on three issues which he addressed in his report: (1) generally accepted human resources practices for large U.S. companies; (2) Chase's human resources policies and practices; and (3) witness credibility. Arjangrad concedes that Buchanan will not testify about the credibility of any witnesses. Moreover, although Arjangrad argues that Buchanan's testimony tends to show Chase did not follow its own policy for investigating discrimination complaints, (P.'s Br., #132, at 5), Buchanan did not directly opine about that issue, instead limiting his analysis to the broader category of "the standards of sound HR practices at major U.S. employers." (Buchanan Report, #46, at 13.) Even if he had, Buchanan would clearly lack qualifications as an expert on Chase's discrimination investigation, since his only experience with Chase's investigation practices and policy consists of reading the policy in the preparation of his report. *See Parton v. United Parcel Serv.*, No. 1:02-cv-2008-WSD, 2005 WL 5974445, at *4 (N.D. Ga. Aug. 2, 2005) (expert who merely read a large company's discipline policy, but did not assist in development or revision of that policy, apply the policy, or perform any research or investigation of the policy's application, was not qualified to testify about the company's disciplinary practices). Thus, I need only analyze whether Buchanan is qualified to testify about accepted human resources practices for large U.S. companies.

The Committee Notes on the 2000 Amendments to Rule 702 make clear that an expert may be qualified by experience alone, or experience in conjunction with "other knowledge, skill,

Page 6- OPINION AND ORDER

training, or education . . . ." Fed. R. Civ. P. 702, Advisory Committee Notes, 2000 Amendments ("Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). For example, one court in this Circuit found that a professor of organizational studies who taught doctoral level courses on human resources practices, worked for 13 years in the staffing industry, founded a staffing consultancy, and belonged to many professional organizations was qualified to testify about a university's deviation from "good human resources practice . . . ." *Humphreys v. Regents of Univ. of Cal.*, No. C 04-03808 SI, 2006 WL 1867713, at *3 (N.D. Cal. July 6, 2006). By contrast, the same court found an attorney was not qualified to offer expert testimony about the university's use of an executive search firm merely because he had been recruited twice by executive search firms and had hired search firms on numerous occasions. *Id.* at *4.

Arjangrad contends that Buchanan is qualified to opine about the adequacy of Chase's investigation compared to accepted HR practices because of his extensive experience as a defense attorney representing and advising employers, his experience training other employment lawyers and HR professionals, and his experience conducting between five and 10 discrimination investigations for large companies. Chase responds that Buchanan has no familiarity with how human resources personnel at large employers actually investigate discrimination complaints, since he has never worked in HR at a large organization or bank like Chase, and has never conducted an investigation for a company that has over 100,000 employees like Chase, and had not conducted any discrimination investigations in the last five years. Further, Chase notes that Buchanan's experience as a lawyer does not afford him specialized knowledge about the anti-

Page 7- OPINION AND ORDER

discrimination policies and practices of large organizations.

While Buchanan clearly has no formalized education or training in HR practices, I find him qualified to testify about standard HR practices in large organizations on the basis of his experience performing discrimination investigations, advising companies, training HR professionals, and writing about HR issues. Buchanan is unlike the purported HR expert in *Parton*, cited by Chase, whom the court found unqualified to testify about "standard human resources practices." *Parton*, 2005 WL 5974445, at *4. There, the purported expert, who had a doctorate in Psycho-Educational Process, claimed familiarity with HR practices based on his development of "performance management curricul[a]" for two former employers and presentation of a program on "Dealing with Difficult Employees" in a series of public seminars. *Id.* By contrast, many aspects of Buchanan's professional experience, beyond just his practice as an employment lawyer, demonstrate his qualification to testify about investigations of discrimination at large U.S. businesses. Specifically, Buchanan's performance of five to 10 discrimination investigations for large companies, his advising of businesses, and his training of HR staff afford him the requisite specialized knowledge to opine about HR practices, particularly those pertaining to discrimination investigations. That Buchanan has never performed an investigation for the exact type of employer at issue here -- a bank or a business as large as Chase -- and has never been employed in an HR department only go to the weight of his potential testimony.

## II.    Reliability

Chase also challenges the reliability of Buchanan's opinion. Again, I limit my analysis to Buchanan's proposed testimony concerning accepted HR practice at major U.S. companies and

Page 8- OPINION AND ORDER

Chase's adherence to those standards, the only topic on which he is qualified to testify. The reliability determination focuses on the scientific validity of the principles and methodology used by the expert. *Daubert*, 509 U.S. at 592-95; *Daubert II*, 43 F.3d at 1317-18 . Rule 702 sets forth the basic test for reliability: (1) the testimony must be based on sufficient fact or data; (2) the testimony must be the product of reliable principles and methods; and (3) the expert must have reliably applied the principles and methods to the facts of the case. Fed. R. Civ. P. 702. In addition, the Supreme Court has created a non-exhaustive list of factors for the determination of the reliability of scientific testimony, including: "(1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Id.* at 593-94. These factors apply to testimony based on technical and specialized knowledge, not just scientific knowledge. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

There are several problems with Buchanan's proposed testimony which lead me to conclude that it is not reliable. First, I agree with Chase that Arjangrad has failed to demonstrate that Buchanan's opinions are the product of reliable principles and methods, reliably applied in this case. Experts such as Buchanan, who rely "solely or primarily on experience," must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Civ. P. 702, Advisory Committee Notes, 2000 Amendments ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *see Parton*, 2005 WL 5974445, at *5 (finding purported HR expert's testimony to be unreliable because he "relies on the mere fact of

Page 9- OPINION AND ORDER

his experience with respect to human resources matters to support this conclusion– in essence, he requests the Court to take his word for it. This subjective, conclusory approach cannot reasonably be assessed for reliability and is plainly insufficient under *Daubert*.").

Here, Buchanan read the documents provided to him by Arjangrad's counsel, had his junior associate perform some legal research, and arrived at his conclusions. (Lively Decl., #127, Ex. 1) (Buchanan Dep., at 26, 28, 47-49.) Buchanan never explains how his experience performing discrimination investigations or his expertise advising employers and HR professionals led him to understand and define generally accepted standards of HR investigation practices. Instead, his report merely asserts that "[e]mployers and lawyers who advise employers have broadly recognized that sound HR practice dictates" companies conduct prompt, thorough, and impartial investigations of discrimination complaints, just as case law requires them to do with harassment complaints. This is circular reasoning– generally accepted HR practice requires certain investigation practices because Buchanan asserts that employers and advisors (like himself) believe it to be so. Buchanan, however, does not offer any personal observations or data gathered from his experience demonstrating that large companies actually adhere to these standards.

Buchanan also cites EEOC guidance exhorting employers to "set up a mechanism for prompt, thorough, and impartial investigation" to investigate discrimination complaints. But, again, Buchanan does not explain whether HR departments in major U.S. companies in fact follow this EEOC guidance, and if they do, what practices they use to implement it. There is no reliable expert methodology inherent in merely reciting the content of aspirational EEOC guidance documents, without explaining their practical import.

Page 10- OPINION AND ORDER

Further, Buchanan's testimony describing the basis for some of the investigation requirements he proposes to be "generally accepted" illustrates the elusiveness of his methods. Buchanan testified that it was "almost self-evident" and "fairly obvious" that investigation interviews be performed face-to-face, rather than over the phone. (Buchanan Dep., at 136-137.) He also opined that the more impartial and independent the investigator, the more effective an investigation, "based on my experience in working with employers over the years and a certain element of common sense, I suppose." (Buchanan Dep., at 107.) If Buchanan wishes to testify about generally accepted HR practices in major companies, he must do more than cite standards based vaguely on his "experience" and "common sense." He must demonstrate that he applied a reliable methodology to gain insight into how companies' HR personnel actually operate, otherwise he is effectively asking the court to "take his word for it." *Parton*, 2005 WL 5974445, at *5.

Also, I agree with Chase that Buchanan lacked sufficient facts or data to make a reliable analysis of the adequacy of Chase's investigation, even assuming he reliably opined about standard HR practice. Chase and Arjangrad spend considerable effort in briefing debating whether Buchanan's conclusions were predetermined by the set of documents provided to him by Arjangrad's counsel. It is common practice for counsel to select a subset of documents from the case to give to a potential expert, and courts generally permit that practice. *See Butler v. Home Depot, Inc.*, 984 F. Supp. 1257, 1260 (N.D. Cal. 1997) (admitting expert testimony despite that expert has not read all of the depositions in the matter and had relied upon plaintiffs' counsel to provide her with "relevant" materials). The bigger problem here, as Chase points out, is that Buchanan was not provided with, and did not obtain, the entire file that Kane compiled on

Page 11- OPINION AND ORDER

Arjangrad during her investigation. Through this oversight, Buchanan was prevented from considering several key items that bear on the adequacy of Kane's investigation and Buchanan's criticisms of it, including summaries of interviews of Arjangrad's former supervisors that Kane received, Kane's notes and other testimony indicating that Kane received information from Arjangrad's coworkers about Arjangrad's conduct, and Chase's response to Arjangrad's BOLI charge. (Suppl. Lively Decl., #140, ¶9, Ex. 1 at 151-152, Ex. 2 at 11-12.)

Arjangrad counters that the completeness of the materials Buchanan reviewed is an issue going to the weight of his testimony, not its admissibility. I disagree. Reliance on incomplete facts and data may make an expert opinion unreliable because an expert must "know[] of facts which enable him to express a reasonably accurate conclusion." *Smith v. Pac. Bell Tel. Co.*, 649 F. Supp. 2d 1073, 1096-1097 (E.D. Cal. 2009) (refusing to admit testimony of an expert in part because expert's report was "based on incomplete facts and selective documents."). For the same reasons, Buchanan's apparently erroneous recitation of certain facts– most particularly that Kane created no "written report" of her investigation– makes his testimony unreliable. *Id.* at 1096 ("Opinions derived from erroneous data are appropriately excluded.") (citing *Slaughter v. Southern Talc Co.*, 919 F.2d 304 (5th Cir. 1990)).

### III. Relevance

Finally, for some of the same reasons that Buchanan's opinions are unreliable, they are also irrelevant. The *Daubert* relevance standard is a liberal one. *Daubert*, 509 U.S. at 587–88. At a minimum, to be relevant an expert's testimony must "logically advance[] a material aspect of the party's case." *Daubert II*, 43 F.3d at 1315. The relevance determination, however, also considers whether the expert's testimony is helpful to the jury. *Elsayed Mukhtar v. Cal. State*

Page 12- OPINION AND ORDER

*Univ., Hayward*, 299 F.3d 1053, 1063 n. 7 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003).

I agree with Arjangrad that Buchanan's testimony, if otherwise reliable, would logically advance several material aspects of her case. For example, Arjangrad proposes that Buchanan's testimony would advance her argument that her termination was pretext for discrimination. Indeed, law suggests that an inadequate investigation in response to a complaint can demonstrate discriminatory or retaliatory intent, when other circumstances imply such intent. *See Hernandez v. City of Vancouver*, No. C04-5539 FDB, 2009 WL 279038, at *5 (W.D. Wash. Feb. 5, 2009) ("The Defendants' failure to follow [good human resources] practices is relevant to Plaintiff's contention that the Defendants actions were discriminatory, and [expert's] testimony could assist the jury because the average juror is unlikely to be familiar with human resources management policies and practices."). Further, failure to adhere to broadly accepted HR norms could show that Chase was not implementing its anti-discrimination policy in good faith, a factor relevant to the availability of punitive damages. *See Costa v. Desert Palace, Inc.*, 299 F.3d 838, 864 (9th Cir. 2002) ("Kolstad provided the employer with a new "good faith" defense, enabling it to escape punitive damages if it can show that the challenged actions were not taken by senior managers and were contrary to the employer's good faith implementation of an effective antidiscrimination policy.")

However, certain elements of Buchanan's testimony are not helpful to a jury and therefore Buchanan's overall conclusion that Chase did not comply with standard HR practices is irrelevant. Expert testimony is not helpful to a jury, and thus not relevant, when it addresses an issue that is within "the common knowledge of the average layman." *United States v. Vallejo*,

Page 13- OPINION AND ORDER

237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001); *see also United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002). To the extent that Buchanan bases his testimony about HR practice standards and Chase's investigation on nothing more than his common sense, as described above, a jury can accomplish the same analysis without an expert.

Moreover, although experts may use legal terms in expressing their opinions, expert testimony that consists of legal conclusions is unhelpful and inadmissible. *See United States v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058, 1060 (9th Cir. 2008). An expert may offer factual conclusions that embrace an ultimate factual issue to be decided, but may not state ultimate legal conclusions, such as whether discrimination occurred. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 179 (S.D.N.Y. 2008); *Hernandez*, 2009 WL 279038, at *5. Here, since Buchanan suggests Weldon discriminated in selecting his bankers and apparently based his ultimate conclusion in part on a determination that Weldon harbored discriminatory animus, Buchanan's testimony is unhelpful.

Also, expert testimony presenting erroneous statements of law is unhelpful to a jury. *Nationwide*, 523 F.3d at 1058. Contrary to Chase's arguments, no individual statement of law in Buchanan's report is technically erroneous. Buchanan does not assert that case law requires employers to conduct investigations in response to complaints of discrimination or retaliation. But, by presenting himself as an employment law expert and asserting that generally accepted HR practices and EEOC guidance require such investigations, his testimony comes perilously close to implying that erroneous legal proposition.

Finally, "opinions that are nothing more than vouchers for or attacks on credibility do not

Page 14- OPINION AND ORDER

assist the trier of fact," since it is the province of the jury to determine credibility. *Hernandez v. City of Vancouver*, No. C04-5539 FDB, 2009 WL 279038, at *2 (W.D. Wash. Feb. 5, 2009) (citing *United States v. Barnard*, 490 F.2d 907, 912-13 (9th Cir.1973) and *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.1979)). Since Buchanan's report opines about Kane's credibility by stating she failed to "earnestly" respond to Arjangrad's charge and includes similar innuendo concerning credibility, it is unhelpful.

## IV.     FRE 403

Chase also argues Buchanan's testimony should be excluded under Fed. R. Evid. 403, since it would require Chase to put on a substantial response to impeach and counter Buchanan's opinions. I need not address these arguments because of my conclusion above that Buchanan is not qualified to testify about anything other than generally accepted HR practices and his testimony on that subject is not reliable or relevant.

## V.     Sanctions

Chase seeks an award of fees and costs incurred to depose Buchanan and to bring this motion to strike, both under Fed. R. Civ. P. 11(b)(1)-(2) and 28 U.S.C. §1927. Chase notes that it warned Arjangrad before filing this motion that no case law supports the use of an employment attorney as an expert concerning the merits of a discrimination case, and that Arjangrad's "efforts to certify Buchanan as an expert lack any good faith basis in law or fact." (D.'s Reply, #139, at 25.) Of all Chase's legal arguments, its attack on Buchanan's qualifications as an expert was the least effective. This motion presents an application of *Daubert* and Rule 702 to HR experts only discussed by a handful of district courts, and never with facts similar to those present here. Sanctions are not justified.

Page 15- OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, Chase's motion to strike the expert report of Paul Buchanan, Esq. (#125), which I construe as a motion to exclude his expert testimony at trial, is granted.

IT IS SO ORDERED.

Dated this 23rd day of May, 2012.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge